**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

TIFFANY TAYLOR, on behalf of herself and all
others similarly situated,

                       Plaintiff,

     v.

RECKITT BENCKISER PHARMACEUTICALS
INC.,

                    Defendant.

Civil Action No.: _____

**COMPLAINT**

       Plaintiff Tiffany Taylor, on behalf of herself and all others similarly situated ("Plaintiff"),

by and through her undersigned counsel, Denlea & Carton LLP, states for her Complaint against

defendant Reckitt Benckiser Pharmaceuticals Inc. ("Defendant" or "Reckitt"), as follows:

## NATURE OF THE ACTION

       1.     This action seeks to redress Defendant's false and misleading marketing

campaign in which four Mucinex branded, non-prescription liquid cold and cough medicine

products are marketed as though they contain honey (collectively the "Mucinex Honey

Products"). Simply stated, the advertising campaign is deceptive because the products do not

contain honey.

       2.     Defendant's product packaging is replete with honey-based imagery and words

including: a honey dripper dripping honey over a honeycomb; a swirling liquid honey

background; Mucinex's cartoon "Mr. Mucus" green monster character, dressed in a yellow and

black honeybee colored shirt; holding a honey dripper dripping honey; surrounded by honeybees.

Similarly, each of the Mucinex Honey Products depict the prominent, bold, and honey-colored

word "HONEY" followed in smaller, less prominent, and lighter colored words "& Berry

Flavor" or "& Berry Natural Flavor." Examples of the honey-themed images and wording on the

front of the products that emphasizes the claim that they contain honey are shown here:




      3.    Two of the Mucinex Honey Products, namely Mucinex Fast-Max Chest

Congestion Honey & Berry Flavor and Mucinex Fast-Max DM Max Honey & Berry Flavor, are

for adults and older children (ages 12+) (collectively the "Adult Mucinex Honey Products").

Two other Mucinex Honey Products, namely Mucinex's Children's FreeFrom Multi-Symptom

Cold & Stuffy Nose Honey & Berry Natural Flavor and Mucinex's Children's FreeFrom Cough
& Mucus Honey & Berry Natural Flavor, are for children (ages 4+ years). (collectively the
"Children's Mucinex Honey Products").

4.      The Mucinex Honey Products contain the same inactive ingredients and differ in
terms of the amount of their active ingredients (cough suppressants, expectorants, and nasal
decongestants Dextromethorphan HBr, Guaifenesin and Phenylephrine as the case may be) and
the recommended doses (less of each active ingredient is in the children's formulation).

5.      Consumers, like Plaintiff, who purchased Defendant's Mucinex Honey Products
have been deceived by Defendant's false and misleading claims that those products contain
honey when they do not, and are entitled to redress through this action for Defendant's deceptive
conduct.

## THE PARTIES

6.      Plaintiff Tiffany Taylor is an individual who resides in Queens County, New
York.

7.      Defendant Reckitt is a Delaware corporation with a principal place of business in
New Jersey, specifically 399 Interpace Parkway, Parsippany, New Jersey 07054.

8.      Defendant markets, sells, and distributes various consumer non-prescription drugs
in New York and throughout the United States, including drugs for cold, flu, cough, congestion,
and related symptoms, competing in a billion dollar industry. Such products include the Mucinex
Honey Products.

9.      Defendant markets, sells, and distributes the Mucinex Honey Products in New
York and throughout the United States, including, but not limited to, through mass retailers such

as CVS, Target, Walmart, and Walgreens (both in their brick-and-mortar stores and on their websites), and other online retailers such as Amazon.

10.    Defendant is responsible for the marketing, advertising, trade dress, labeling, and packaging of the Mucinex Honey Products.

## JURISDICTION AND VENUE

11.    This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because (1) the amount in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs, and (2) the named Plaintiff and Defendant are citizens of different states. 28 U.S.C. § 1332(d)(2)(A).

12.    The Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), as the parties are diverse and the amount in controversy exceeds the requisite threshold.

13.    This Court may exercise jurisdiction over Defendant because Defendant has sufficient minimum contacts in New York and purposely avails itself of the markets within New York through the promotion, sale, marketing, and distribution of its products, thus rendering jurisdiction by this Court proper and necessary

14.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred within this judicial district and because Defendant has marketed and sold the products at issue in this action within this judicial district and has done business within this judicial district.

## CHOICE OF LAW

15.    New York law governs the state law claims asserted herein by Plaintiff and the New York class she seeks to represent.

16.     New York has a substantial interest in protecting the rights and interests of New York residents against wrongdoing by companies that market and distribute their products within the State of New York.

## FACTUAL BACKGROUND

I.     **Defendant's False and Misleading Advertising Campaign Featuring Honey, An Ingredient Absent From The Mucinex Honey Products.**

17.     Consumers increasingly are becoming aware of the benefits of living a healthy lifestyle, including eating nutritious foods, and taking medicines derived from real, natural ingredients. That is one reason that the Children's Mucinex Honey Products emphasize, for example, that they are free from "Artificial Flavors, Colors & Dies ·Alcohol & Sugar."

18.     Honey has long been considered to have nutritional benefits and therapeutic promise. Studies show honey is a source of antioxidants, and provides health benefits for bronchitis, sore throat, digestion, hematology, and immunity, among others.[1]

19.     "Human use of honey is traced to some 8000 years ago as depicted by Stone Age paintings. In addition to [the] important role of natural honey in the traditional medicine, during the past few decades, it was subjected to laboratory and clinical investigations by several research groups and it has found a place in modern medicine. Honey has been reported to have an inhibitory effect on around 60 species of bacteria, some species of fungi and viruses. Antioxidant capacity of honey is important in many disease conditions and is due to a wide range of compounds including phenolics, peptides, organic acids, enzymes, and Maillard reaction

---

[1]     *See* Honey - Mayo Clinic; 7 Unique Health Benefits of Honey (healthline.com); Honey and Health: A Review of Recent Clinical Research - PMC (nih.gov). *See also* https://www.webmd.com/cold-and-flu/what-to-know-about-natural-expectorants (honey as a natural expectorant to relieve cough and congestion).

products. Honey has also been used in some gastrointestinal, cardiovascular, inflammatory and neoplastic states."[2]

20.    Businesses, including Defendant, promote honey as a superior, natural treatment for coughs and colds to capitalize on consumers' belief in the health and nutritional benefits of honey.

21.    Defendant deceives consumers by conveying the false and misleading impression through words and images that the Mucinex Honey Products contain honey (when they do not) in the one place Defendant intends consumers to look when purchasing a product – the front of the packaging.

22.    Defendant falsely and misleadingly claims on the front of the packaging of the Adult Mucinex Honey Products that they contain honey. The front of the packaging is replete with honey-based imagery, of a honey dripper dripping honey over a honeycomb, swirling liquid honey background, and the bold, capitalized, and honey-colored word "HONEY" followed in smaller, less prominent, and lighter colored words "& Berry Flavor." The following is an image of the front of the packaging of the Mucinex Fast-Max Chest Congestion Honey & Berry Flavor product:

---

[2]    Traditional and Modern Uses of Natural Honey in Human Diseases: A Review.  Iran J Basic Med Sci, 2013 Jun; 16(6): 731-742.  PMID: 23997898.  PMCID: PMC3758027.



23.     A closer view of the front label is shown here:[3]

---

[3]     *See* https://dailymed.nlm.nih.gov/dailymed/drugInfo.cfm?setid=8ec74cf2-88f5-40be-87e2-b756ab841754



24.    The following is an image of the front of the packaging of the Mucinex Fast-Max

DM Max Honey & Berry Flavor product:



25.    A closer view of the front label is as shown here:[4]

---

[4]    *See* https://www.instacart.com/landing?product_id=22050781&retailer_id=456&utm_term=pbi-0&utm_campaign=mucinex-dm-max%2C-honey-%26-berry-flavor---6-fl-oz_rite-aid&utm_source=instacart_google&utm_medium=shopping_free_listing&utm_content=productid-22050781_retailerid=456&region_id=14490932081



26.     The following is an image from the Mucinex website promoting the Adult

Mucinex Honey Products that underscores the centrality of honey imagery and honeybees (which

actually produce real honey) to Defendant's promotion of those products:[5]



---

[5]     Mucinex website: https://www.mucinex.com/products/mucinex%C2%AE-fast-max%C2%AE-dm-max-adult-liquid-honey-berry-6-oz

27.    Consumers of the Adult Mucinex Honey Products cannot view the inactive ingredient statement at the time of purchase because it is either located behind a peel-back label on the back of the products or is not on the products.

28.    The following are images of the back of the Adult Mucinex Honey Products with the peel-back label concealing the list of inactive ingredients:[6]

 

---

[6]    *See* https://www.instacart.com/products/21726809-mucinex-chest-congestion-honey-berry-flavor-maximum-strength-6-oz. *See also* https://www.instacart.com/landing?product_id=22050781&retailer_id=456&utm_term=pbi-0&utm_campaign=mucinex-dm-max%2C-honey-%26-berry-flavor---6-fl-oz_rite-aid&utm_source=instacart_google&utm_medium=shopping_free_listing&utm_content=productid-22050781_retailerid=456&region_id=14490932081

29.     The following is an example of the information regarding the inactive ingredients (various chemical names of food additives and coloring that are not familiar to the reasonable consumer with the exception of "purified water") in the Adult Mucinex Honey Products that appears or is supposed to appear underneath the peel-back label on the back of the products:[7]



30.     Notably, the list of inactive ingredients in the Adult Mucinex Honey Products does not include honey, which Defendant would be required by law to list if those products contained honey.[8] They do not contain honey.

---

[7]     See https://dailymed.nlm.nih.gov/dailymed/lookup.cfm?setid=da1f1ef9-a974-4998-8e1d-c1d999596943

[8]     The FDA requires that any product containing honey disclose the ingredient "honey" in the

31.    Defendant also falsely and misleadingly claims on the front of the packaging of the Children's Mucinex Honey Products that they contain honey, with the front of the packaging replete with honey-based imagery of Mucinex's cartoon "Mr. Mucus" green monster character, dressed in a yellow and black honeybee colored shirt, holding a honey dripper dripping honey, and surrounded by honeybees, and the prominent, bold, and honey-colored word "HONEY" followed in smaller, less prominent, and lighter colored words "& Berry Natural Flavor."

32.    The following are images of the front of the packaging of the Children's Mucinex Honey Products:

---

ingredient statement. *See* 21 U.S.C. §§ 342-343. *See also* Proper Labeling of Honey and Honey Products: Guidance for Industry, February 2018. To be clear, Plaintiff does not bring this action pursuant to any FDA requirements but, as set forth below, pursuant to New York's General Business Law.



33.     The following are images of the other packaging panels of one of the Children's Mucinex Honey Products listing in a small box in small type the inactive ingredients (various chemical names of food additives and coloring that are not familiar to the reasonable consumer with the exception of "purified water") in those products, and the listing of the inactive ingredients on the side of the packaging is in plain blue type compared to the much larger and more prominent honey-related graphics and the honey-colored word "HONEY" on the front of the packaging (which is where consumers focus):

## Drug Facts

### Active ingredients                    Purposes
(in each 5 mL)
Dextromethorphan HBr 5 mg..........Cough suppressant
Guaifenesin 100 mg..............................Expectorant
Phenylephrine HCl 2.5 mg.............Nasal decongestant

### Uses
- helps loosen phlegm (mucus) and thin bronchial secretions to rid the bronchial passageways of bothersome mucus and make coughs more productive
- temporarily relieves:
  - cough due to minor throat and bronchial irritation as may occur with the common cold or inhaled irritants
  - the intensity of coughing
  - the impulse to cough to help your child get to sleep
  - nasal congestion due to a cold
  - stuffy nose

### Warnings
**Do not use** in a child who is taking a prescription monoamine oxidase inhibitor (MAOI) (certain drugs for depression, psychiatric, or emotional conditions, or Parkinson's disease), or for 2 weeks after stopping the MAOI drug. If you do not know if your child's prescription drug contains an MAOI, ask a doctor or pharmacist before giving this product.

**Ask a doctor before use if the child has**
- heart disease
- high blood pressure
- thyroid disease
- diabetes
- persistent or chronic cough such as occurs with asthma
- cough that occurs with too much phlegm (mucus)

**When using this product do not use more than directed**

**Stop use and ask a doctor if**
- nervousness, dizziness, or sleeplessness occur
- symptoms do not get better within 7 days or occur with fever
- cough lasts more than 7 days, comes back, or occurs with fever, rash, or persistent headache. These could be signs of a serious condition.

**Keep out of reach of children.** In case of overdose, get medical help or contact a Poison Control Center right away.

### Directions
- do not give more than 6 doses in any 24-hour period
- measure only with dosing cup provided
- do not use dosing cup with other products
- dose as follows or as directed by a doctor

| Age | Dose |
| --- | --- |
| children 6 to under 12 years of age | 10 mL every 4 hours |
| children 4 to under 6 years of age | 5 mL every 4 hours |
| children under 4 years of age | do not use |

## What this has is just as important as what it doesn't.

**Leading Children's OTC Cough & Cold brand\* with the effective symptom relief you trust – FREE**FROM the unwanted additives:

**Caffeine Free · No Artificial Colors, Dyes, or Flavors · Alcohol & Sugar Free No High Fructose Corn Syrup**

## POWERFUL SYMPTOM RELIEF

- ✓ Relieves Stuffy Nose
- ✓ Controls Cough
- ✓ Relieves Chest Congestion
- ✓ Thins & Loosens Mucus

**DOSING CUP INCLUDED**

## HONEY
· & BERRY NATURAL FLAVOR

**PARENTS:**
Learn about teen medicine abuse
www.StopMedicineAbuse.org

Questions or comments?
1-866-Mucinex (1-866-682-4639)
or www.mucinex.com

HEALTH > HYGIENE > HOME



34.    Honey is not listed as one of the inactive ingredients in the Children Mucinex Honey Products because those products also do not contain honey. Deceptively, Defendant further misleads consumers by adding to the label, "No High Fructose Corn Syrup." This is not to suggest that Defendant added high fructose corn syrup; rather that Defendant knows that

consumers associate its presence as either an adulteration of, or substitute for, real honey. By including this language, Defendant fortifies the false inference that the product contains only real honey.

35.    Defendant deceives and misleads reasonable consumers into believing that its Mucinex Honey Products contain honey by portraying, marketing, and promoting those products in the manner set forth above. It does so instead of being honest and transparent on the front of the packaging (which is what consumers are directed to focus on) that the Mucinex Honey Products do not contain honey.

**II.    Plaintiff Purchased the Mucinex Honey Products That Are Misrepresented as Containing Honey.**

36.    In or about May 2023, Plaintiff purchased one of the Mucinex Honey Products, namely the Mucinex Fast-Max Chest Congestion Honey & Berry Flavor product, at a Stop & Shop supermarket near her home in Queens, New York.

37.    Prior to purchasing the Mucinex Honey Products, Plaintiff saw the product packaging and, in particular, the representations on the front with honey-based imagery of a honey dripper dripping honey over a honeycomb and swirling liquid honey background and the bold and honey-colored word "HONEY."

38.    Plaintiff purchased the Mucinex Honey Products reasonably believing that Defendant's Mucinex Honey Products contain honey.

39.    Had Plaintiff known that Defendant's Mucinex Honey Products do not contain honey she would not have purchased Defendant's products or, at the very least, would not have paid a price premium for Defendant's Mucinex Honey Products.

## <u>CLASS DEFINITION AND ALLEGATIONS</u>

40.     Plaintiff brings this action on behalf of herself and all other similarly situated

consumers in the State of New York pursuant to Rule 23 of the Federal Rules of Civil Procedure,

and seeks certification of the following class (the "<u>Class</u>"):

> All consumers who, within the applicable statute of limitations
> period, purchased in the State of New York (whether online or in-
> person) the Mucinex Honey Products – manufactured, marketed,
> distributed and/or sold by Defendant which Defendant warranted
> as containing honey (the "Class Products"). Excluded from the
> class are Defendant, its parents, subsidiaries, affiliates, officers and
> directors, judicial officers and their immediate family members
> and associated court staff assigned to this case, and those who
> purchased Class Products for resale.

41.     Plaintiff expressly disclaims any intent to seek any recovery in this action for

personal injuries that she or any Class member may have suffered.

42.     **<u>Numerosity</u>**. This action is appropriately suited for a class action. The members

of the Class are so numerous that joinder of all members of the Class is impracticable. Plaintiff is

informed, believes, and thereon alleges, that the proposed Class contains thousands of purchasers

of the Class Products who have been damaged by Defendant's conduct as alleged herein. The

precise number of Class members is unknown to Plaintiff.

43.     **<u>Existence and Predominance of Common Questions of Law and Fact</u>**. This

action involves questions of law and fact common to the Class. The common legal and factual

questions include, but are not limited to, the following:

- Whether Defendant's conduct, as alleged herein, constitutes violations of
  New York General Business Law Section 349**.**

- Whether Defendant's conduct, as alleged herein, constitutes violations of
  New York General Business Law Section 350.

- Whether Defendant labeled, packaged, advertised, marketed, and/or sold
  each Class Product with claims that it contained honey, including, but not
  limited to, with accompanying honey-based imagery of a honey dripper

dripping honey over a honeycomb and swirling liquid honey background, or Mucinex's cartoon "Mr. Mucus" green monster character dressed in a yellow and black honeybee colored shirt, holding a honey dripper dripping honey, and surrounded by honeybees, and the prominent, bold and honey-colored word "HONEY" followed in smaller, less prominent and lighter colored words "& Berry Flavor" or "& Berry Natural Flavor."

- Whether Defendant's labeling, packaging, advertising, marketing, and/or selling of each Class Product with claims that it contained honey, including, but not limited to, with accompanying honey-based imagery of a honey dripper dripping honey over a honeycomb and swirling liquid honey background, or Mucinex's cartoon "Mr. Mucus" green monster character dressed in a yellow and black honeybee colored shirt, holding a honey dripper dripping honey, and surrounded by honeybees, and the prominent, bold and honey-colored word "HONEY" followed in smaller, less prominent and lighter colored words "& Berry Flavor" or "& Berry Natural Flavor," was and/or is false, fraudulent, deceptive, and/or misleading.

44.    **Typicality**. Plaintiff's claims are typical of the claims of the members of the Class because, *inter alia*, all Class members have been injured through the uniform misconduct described above and were subject to Defendant's misrepresentations. Moreover, Plaintiff's claims are typical of the Class members' claims. Plaintiff is advancing the same claims and legal theories on behalf of herself and all members of the Class.

45.    **Adequacy of Representation**. Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff purchased a Class Product, and she was harmed by Defendant's deceptive misrepresentations. Plaintiff has therefore suffered an injury in fact as a result of Defendant's conduct, as did all Class members who purchased Class Products. Plaintiff has retained counsel experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously. Plaintiff has no adverse or antagonistic interests to those of the Class.

46.    **Superiority**. A class action is superior to other methods for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual

Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would be virtually impossible for a member of the Class, on an individual basis, to obtain effective redress for the wrongs done to him or her. Further, even if the Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no management difficulties under the circumstances here.

47. Plaintiff seeks monetary damages, including statutory damages on behalf of the entire Class. Unless a Class is certified, Defendant will be allowed to profit from its deceptive practices, while Plaintiff and the members of the Class will have suffered damages.

### As and for a First Cause of Action
### (Violation of New York General Business Law Section 349)

48. Plaintiff realleges and incorporates by reference the allegations in the paragraphs above as if fully set forth herein.

49. New York General Business Law § 349 prohibits "deceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in New York.

50. By labeling, packaging, advertising, marketing, distributing, and/or selling each Class Product to Plaintiff and the other Class members with false and misleading claims that the Class Products contained honey as set forth above, Defendant engaged in, and continues to engage in, deceptive acts and practices.

51.    In taking these actions, Defendant failed to disclose material information about its products, which omissions were misleading in a material respect to consumers and resulted in the purchase of Defendant's products.

52.    Defendant has deceptively labeled, packaged, advertised, marketed, promoted, distributed, and sold the Class Products to consumers.

53.    Defendant's conduct was consumer oriented.

54.    Defendant engaged in the deceptive acts and/or practices while conducting business, trade, and/or commerce and/or furnishing a service in New York.

55.    Defendant's misrepresentations were misleading in a material respect because the Class Products did not contain honey.

56.    Defendant knew, or should have known, that by making the misrepresentations addressed herein, Plaintiff and other consumers would be misled into purchasing Class Products.

57.    Plaintiff and the Class members have been aggrieved by and have suffered losses as a result of Defendant's violations of Section 349 of the New York General Business Law. By virtue of the foregoing unfair, unconscionable, and deceptive acts in the conduct of trade or commerce, Plaintiff and the members of the Class have been substantially injured by purchasing and/or overpaying for a product that is not what Defendant represents it to be.

58.    By reason of the foregoing, Defendant's conduct, as alleged herein, constitutes deceptive acts and practices in violation of Section 349 of the New York General Business Law, and Defendant is liable to Plaintiff and the Class for the actual damages that they have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial, plus statutory damages, treble damages, and attorneys' fees and costs.

59.    Defendant's conduct, as alleged herein, in violation of Section 349 of the New York General Business Law was engaged in by Defendant willfully and/or knowingly. Accordingly, Plaintiff and members of the Class are entitled to an award of damages above and beyond their actual damages in accordance with Section 349(h) of the New York General Business Law.

**As and for a Second Cause of Action**
**(Violation of New York General Business Law Section 350)**

60.    Plaintiff realleges and incorporates by reference the allegations in the paragraphs above as if fully set forth herein.

61.    Defendant's labeling, packaging, marketing, and advertising of the Class Products is "misleading in a material respect," as it fails to disclose to consumers material information in Defendant's sole possession and, thus, is "false advertising."

62.    No rational individual would purchase the Class Products at the prices at which they are sold with full knowledge that the Class Products do not contain honey.

63.    Defendant's labeling, packaging, marketing, and advertising of the Class Products as containing honey were consumer oriented.

64.    Defendant's labeling, packaging, advertisements, and marketing of the Class Products as containing honey were misleading in a material respect.

65.    By virtue of the foregoing unfair, unconscionable, and deceptive acts in the conduct of trade or commerce in New York, Plaintiff and the members of the Class have been substantially injured by paying for a product that has diminished, lesser or no value due to its false claims that the Class Products contain honey.

66.     Defendant's conduct, as alleged herein, constitutes false advertising in violation of Section 350 of the New York General Business Law, and Defendant is liable to Plaintiff and

the members of the Class for the actual damages that they have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial, statutory damages, plus treble damages, and attorneys' fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment against Defendant as follows:

A.      Certifying this action as a class action as soon as practicable, with the Class as defined above, designating Plaintiff as the named Class representative, and designating the undersigned as Class Counsel.

B.      On Plaintiff's First Cause of Action, awarding against Defendant the damages that Plaintiff and the other members of the Class have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial, plus statutory and treble damages.

C.      On Plaintiff's Second Cause of Action, awarding against Defendant the damages that Plaintiff and the other members of the Class have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial, plus statutory and treble damages.

D.      On Plaintiff's First and Second Causes of Action, awarding Plaintiff and the Class interest, costs, and attorneys' fees.

E.      Awarding Plaintiff and the Class such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated:    November 29, 2023
          White Plains, New York

                              **DENLEA & CARTON LLP**


                    By:   */s/*  Steven R. Schoenfeld_____
                          James R. Denlea
                          Jeffrey I. Carton
                          Steven R. Schoenfeld
                          Stan Sharovskiy

                          2 Westchester Park Drive, Suite 410
                          White Plains, New York 10604
                          Tel.: (914) 331-0100
                          Fax: (914) 331-0105
                          jdenlea@denleacarton.com
                          jcarton@denleacarton.com
                          sschoenfeld@denleacarton.com
                          ssharovskiy@denleacarton.com

                          *Attorneys for Plaintiff*